UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRETT C. KIMBERLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 99-1515 (RMU) |
| ) | |
| MADELEINE ALBRIGHT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

FILED
SEP 28 2000
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

**Granting defendant's motion for summary judgment**

Plaintiff filed this action *pro se*, seeking injunctive, declaratory, and monetary relief against the Secretary of State, the Acting Director of the Office of Passport Policy, and the Department of State, for alleged violations of the Passport Protection Act (22 U.S.C. § 2721), the Department's regulations, and the Freedom of Information and Privacy Acts (5 U.S.C. §§ 552, 552a). Defendants have filed a motion to dismiss or, alternatively, for summary judgment, to which plaintiff has responded. Having reviewed the motion papers, the opposition, the reply, the complaint and the applicable law, the court will grant summary judgment for defendants.

I. The Complaint

In 1997, plaintiff, holder of a valid United States passport, was on parole under supervision by the United States Parole Commission. On April 10 of that year, his parole officer confiscated his passport, allegedly as a result of political pressure designed to inhibit plaintiff's First Amendment rights. The passport was sent to the Department of State, which at first refused to return the passport until informed of the disposition of his criminal case. Thereafter, plaintiff was advised that the

passport would not be returned but that he could obtain copies of it and all documents in the file by a request under the Privacy Act, 5 U.S.C. § 552a. Until the complaint was filed, however, the Department did not respond to his Privacy Act request. Plaintiff, who has since been incarcerated on a violation of parole, alleges that he needs the passport in connection with various legal actions and also that his wife, a foreign national, could use the passport to prove that she is married to a United States citizen. He seeks an order (1) declaring that defendants have "intentionally and in bad faith" violated his rights under the Passport Protection Act, (2) requiring release of all documents "regarding" his passport in possession of the Department of State, (30 requiring return of his passport, and also compensatory and punitive damages.

II. The Defendants' Motion

Defendants' motion is based primarily on the contention that this court lacks subject matter jurisdiction over plaintiff's claim. In addition, they argue that the individual defendants have not been properly served and are entitled to qualified immunity, and that the complaint fails to state a claim on which relief can be granted.

A. Material facts

Defendants have provided a statement of material facts not in dispute, supported by the declaration of John M. Hotchner, Director of the Office of Passport Policy, Planning and Advisory Services ("PAS") at the Department of State, references to sections of the Code of Federal Regulations, and letters. Substantially all of the material facts are not in dispute.

According to the Hotchner declaration, the office he heads is responsible for the administration and implementation of United States passport laws and regulations promulgated pursuant to 22 U.S.C. 211a. The regulations authorize the Secretary of State to deny, limit, or revoke

a passport for an individual subject to a criminal court order or on probation or parole. 22 C.F.R. 51.70(a)(2). In addition, PAS will hold confiscated a passport and refuse to issue a replacement passport when it is notified by a law enforcement agency that a court has ordered surrender of a passport or that the holder presents a flight risk. If the holder of such a passport requests its return or replacement, PAS will require the person to provide information as to the disposition of the relevant criminal proceedings. If the holder submits a letter from the court or law enforcement agency that international travel is allowed, the passport will be returned or replaced.

In April, 1997, PAS received plaintiff's passport from the Probation Office of the United States District Court for the District of Maryland. The accompanying letter advised PAS that plaintiff was under parole supervision by the United States Parole Commission. The Commission had asked the probation agent to take plaintiff's passport and hold it to insure that plaintiff would not leave the country during pending proceedings on alleged violation of parole. The probation agent asked that the Passport Office "refuse any request" by plaintiff for a new passport. (Deft. Ex.1).

Accordingly, PAS has held plaintiff's passport since April, 1997. It has not been revoked or limited. When plaintiff requested return of the passport in November, 1997, PAS explained that it needed a letter from the Parole Commission "regarding the disposition of the criminal case against [him]." PAS later learned from the Commission directly that plaintiff's parole had been revoked on June 27, 1997, and that he was incarcerated. The letter from the General Counsel of the Commission asked that PAS hold the passport "until further notice" to "prevent [plaintiff] from leaving the United States without permission in the event he is paroled or otherwise release from prison" prior to the expiration of his sentence. (Deft. Ex. 6)

Since there has been no further notice from the Parole Commission, PAS continues to hold

3

plaintiff's passport. In September, 1999, PAS sent plaintiff a copy of his passport, presumably in response to a request he had submitted in March, 1998.

Of these facts, plaintiff contests the assertion that the Parole Commission considered him a flight risk. He explains that he was permitted to travel until the final parole revocation hearing. He also contests the implication that there was a condition of parole prohibiting him from traveling or holding a passport. He asserts in addition that his parole officer told him he could regain his passport by relinquishing funds from a book contract, and that his passport was taken without due process and in violation of his First Amendment rights.

B. Discussion

Plaintiff argues that his right to free speech was infringed in violation of the Passport Protection Act, 22 U.S.C. § 2721, because the Department of State is holding his passport after it was taken from him by his parole officer. Allegedly the Parole Commission ordered seizure of the passport as a result of political pressure exerted because plaintiff had contributed to the election of President Clinton, had written a book, and had been allowed to travel internationally while on parole. The Passport Protection Act provides:

> A passport may not be denied issuance, revoked, restricted, or otherwise limited because of any speech, activity, belief, affiliation, or membership, within or outside the United States, which, if held or conducted within the United States, would be protected by the first amendment to the Constitution of the United States.

Defendant responds, however, that Plaintiff's passport has not been denied, revoked, restricted, or otherwise limited. Rather, the passport remains valid but is being held by the Department pending resolution of his criminal case. Hotchner Dec. ¶ 11. Plaintiff argues that the Passport Protection Act was violated when the passport was seized merely because he exercised his First Amendment right

to free speech. Defendants respond first that plaintiff has not been injured, because his passport remains valid and will be returned when the Parole Commission authorizes him to hold a passport. Hotchner Dec. ¶ 8. Moreover, as defendants point out, any injury plaintiff has suffered was the result of acts of the Parole Commission and his parole agent, rather than of the defendants in this case. Similarly, they argue, plaintiff's complaint that his passport was seized without due process or a hearing is an argument that must be made to the Parole Commission rather than to the defendants in this case.

A passport "shall at all times remain the property of the United States and shall be returned to the Government upon demand." 22 C.F.R. § 51.9. The Supreme Court has upheld the authority of the Secretary of State to revoke a passport. Haig v. Agee, 453 U.S. 280, 290 (1980). A regulation issued pursuant to the Department's authority to issue passports, 22 C.F.R. § 51.70(a)(2), authorizes the Secretary of State to refuse to issue a passport when she "determines or is informed by competent authority that . . . [t]he applicant is subject to a criminal court order . . . or condition of parole, any of which forbids departure from the United States and the violation of which could result in the issuance of a Federal warrant of arrest . . . ." Section 51.72 provides that a passport may be revoked, restricted, or limited in situations where the holder "would not be entitled to issuance of a new passport under Sec. 51.70 . . . ." Judge Kollar-Kotelly of this court upheld the power of the Secretary to revoke a passport pursuant to a section of this regulation relating to a citizen who fled to another country to escape service of a federal arrest warrant. Kelso v. Department of State, 13 F. Supp. 2d 1 (D.D.C. 1998). Based on the same authority, the Department will hold a passport issued to a person on parole until notified of the disposition of the criminal proceeding by the individual or the supervising law enforcement agency. Hotchner Decl. ¶¶ 8-10. Plaintiff's passport was taken by his

parole officer pursuant to a request of the United States Parole Commission, pending proceedings to determine whether he had violated parole and whether parole should be revoked. Hotchner Decl. Ex. 1. The action of the defendants in receiving and holding plaintiff's passport did not violate the Passport Protection Act.

Plaintiff's Freedom of Information Act/Privacy Act[1] claim will be dismissed as moot. Defendants correctly point out that because plaintiff does not allege that he filed a FOIA request, he has no claim under that statute. 5 U.S.C. § 552(a)(3)(A). Nor did he submit an appropriate Privacy Act request to the appropriate entity within the Department. 5 U.S.C. § 552a(g)(1)(D). Nevertheless, the Passport Office did send him a copy of all pages of his passport, as requested in a handwritten addendum to a letter to an employee of the Office of Passport Policy and Advisory Services. Hotchner Decl. Exs. 2, 7, 8. Defendants have no obligation to certify that they have provided all relevant documents because plaintiff did not submit a request in compliance with department regulations.

Defendants next argue that plaintiff fails to state a claim under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., because there has been no final adverse agency action. They reiterate that plaintiff's passport has not been revoked or restricted, but that it is being held pursuant to regulation until the Department is advised that the criminal proceedings against him have ended or that the Parole Commission will again authorize him to hold the passport.[2] The Department's

---

[1] 5 U.S.C. §§ 552, 552a.

[2] The court notes that State Department regulations provide for an administrative remedy when a person "has . . . been the subject of an adverse action taken on an individual basis with respect to his or her right to receive or use a passport." 22 C.F.R. §§ 51.75, 51.81-51.105. These provisions specifically apply "to persons who are the subject of adverse action under Secs. 51.70 .

(continued...)

actions in receiving and holding the passport are neither arbitrary nor capricious but taken pursuant to generally applicable regulations. Moreover, plaintiff has not shown that he has suffered any real injury because he does not have custody of his passport. He does not need it for identification, he is incarcerated for the foreseeable future,[3] and any inconvenience his wife might suffer because she could not use his passport to prove her marriage to a U.S. citizen is not an injury about which plaintiff can complain.

Finally, the Bivens[4] complaint against the individual defendants fails to state a claim on which relief can be granted.[5] Plainly, the Secretary of State cannot be held liable on a theory of *respondeat superior* merely because she is head of the Department that houses the Office of Passport Policy. E.g., Farmer v. Moritsugu, 163 F.3d 610, 615 (D.C. Cir. 1998); Cameron v. Thornburgh, 983 F.2d 253 (258 (D.C. Cir. 1993).

In addition, the Supreme Court has cautioned against the extension of a Bivens remedy to a situation where there is an adequate statutory remedy for constitutional violations in connection with a government program. Schweiker v. Chilicky, 487 U.S. 412 (1988); Bush v. Lucas, 462 U.S. 367 (1983); Spagnola v. Mathis, 859 F.2d 223, 229-30 (D.C. Cir. 1988)(*en banc*). The

---

[2](...continued)
. . ." 22 C.F.R. § 51.80.

[3] See Kimberlin v. DeWalt, 12 F. Supp. 2d 487 (D. Md.), aff'd sub nom. Kimberlin v. Bidwell, 166 F.3d 333 (4th Cir. 1998), cert. denied, 527 U.S. 1041 (1999)..

[4] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[5] Because plaintiff filed this complaint *in forma pauperis* he was dependent on the United States Marshal to serve the defendants. Accordingly, the court will not dismiss the complaint on the ground of improper service of process.

Administrative Procedure Act and the statutory claim against the Department under the Passport Protection Act provide sufficient remedies for plaintiff's constitutional claims.

For the foregoing reasons, the defendants' motion for summary judgment will be granted. An appropriate order signed this day accompanies this memorandum opinion.

*[signature]*
RICARDO M. URBINA
United States District Judge

DATE: 9-28-00